UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
VERIZON NEW YORK INC. and LONG ISLAND
LIGHTING COMPANY d/b/a LIPA,

                                                                     CV-11-0252 (LDW) (AKT)

                  Plaintiffs,

      -against-

THE VILLAGE OF WESTHAMPTON BEACH, THE
VILLAGE OF QUOGUE and THE TOWN OF
SOUTHAMPTON,

                  Defendants.
------------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANT VILLAGE OF WESTHAMPTON BEACH'S
MOTION FOR SUMMARY JUDGMENT AND FOR PRELIMINARY INJUNCTION**

                                                  SOKOLOFF STERN LLP
                                                  *Attorneys for Defendant Village of*
                                                  *Westhampton Beach*
                                                  355 Post Avenue, Suite 201
                                                  Westbury, New York 11590
                                                  (516) 334-4500
                                                  File No.: 120073

                                                  THE LAW OFFICES OF
                                                  RICHARD T. HAEFELI
                                                  48F Main Street
                                                  P.O. Box 1112
                                                  Westhampton Beach, NY 11978

*Of Counsel:*
   Brian S. Sokoloff
   Leo Dorfman
   Richard Haefeli

**TABLE OF CONTENTS**

## Contents

PRELIMINARY STATEMENT ..................................................................................................1

    ARGUMENT..................................................................................................................................2

        POINT I:     THE CONTENTS OF THE VILLAGE 56.1 STATEMENT OF FACT SHOULD BE DEEMED ADMITTED AS UNOPPOSED.......................................................2

        POINT II:    VERIZON DOES NOT HAVE AUTHORITY TO PERMIT THE ATTACHMENT OF PRIVATE OBJECTS TO PUBLIC UTILITY POLES FOR A PRIVATE PURPOSE .......................................................................................3

        POINT III:   THE FRANCHISE AGREEMENTS EXECUTED BY LIPA'S PREDECESSORS PRECLUDE LIPA FROM ALLOWING PRIVATE OBJECTS TO BE ATTACHED TO PUBLIC UTILITY POLES FOR PRIVATE PURPOSES....................5

        POINT IV:   WESTHAMPTON BEACH HAS STANDING TO CHALLENGE LIPA'S AND VERIZON'S VIOLATION OF THE ESTABLISHMENT CLAUSE THROUGH USE OF VILLAGE PUBLIC PROPERTY FOR A PURELY RELIGIOUS PURPOSE.......................................................................................9

        POINT V:    LIPA AND VERIZON HAVE NOT SET FORTH EVIDENCE TO SHOW THAT "EQUAL TREATMENT" RATHER THAN THE MORE OBVIOUS ADVANCEMENT OF RELIGION IS THEIR PURPOSE IN ALLOWING ATTACHMENT OF *LECHIS* ...............................................................................10

        POINT VI:   LIPA AND VERIZON'S LICENSE AGREEMENTS HAVE THE PRIMARY EFFECT OF ADVANCING AND ENDORSING THE RELIGIOUS PRACTICES OF ONE GROUP OF OBSERVANT JEWS ...........................................................11

        POINT VII:  VERIZON'S AND LIPA'S CONVERSION OF PUBLIC UTILITY POLES INTO RELIGIOUS IMPLEMENTS IS AN ADVANCEMENT OF RELIGION, NOT A REASONABLE ACCOMMODATION THEREOF................................................12

        POINT VIII: THE VILLAGE HAS ESTABLISHED ITS ENTITLEMENT TO A PRELIMINARY INJUNCTION ......................................................................14

CONCLUSION ............................................................................................................................15

i

**TABLE OF AUTHORITIES**

Cases

ACLU v. City of Long Branch,
   670 F. Supp. 1293 (D.N.J. 1987)..................................................................................11, 12

Chaplaincy of Full Gospel Churches v. England,
   454 F.3d 290 (D.C. Cir. 2006)................................................................................................13

Fletcher v. Peck,
   10 U.S. 87, 3 L. Ed. 162 (1810) ..............................................................................................6

Global Vision Products, Inc. v. Pfizer, Inc.,
   2006 WL 344757 (S.D.N.Y., Feb. 14, 2006) .........................................................................2

Lujan v. Defenders of Wildlife,
   504 U.S. 555 (1992) ................................................................................................................9

New Orleans Gas-light Co. v. Louisiana Light & Heat Producing & Mfg. Co.,
   115 U.S. 650 (1885) ................................................................................................................6

New York Tel. Co. v. North Hempstead,
   86 Misc. 2d 487 (N.Y. Sup. Ct. Nassau Co. 1975)..................................................................3

New York Tel. Co. v. Town of N. Hempstead,
   41 N.Y .2d 691 (1977).............................................................................................................4

Nw. Fertilizing Co. v. Vill. of Hyde Park,
   97 U.S. 659 (1878) ..................................................................................................................3

Ohio Life Ins. & Trust Co. v. Debolt,
   57 U.S. 416, 14 L. Ed. 997 (1853) .........................................................................................6

Pearsall v. Great N. Ry. Co.,
   161 U.S. 646 (1896) ................................................................................................................3

Skoros v. City of New York,
   CV-02-6439 (CPS), 2004 WL 5570287 (E.D.N.Y. Feb. 18, 2004) .......................................11

Skoros v. City of New York,
   437 F.3d 1 (2d Cir. 2006) ......................................................................................................10

Smith v. Cmty. Bd. No. 14,
   128 Misc. 2d 944 (Sup. Ct., Queens Cnty. 1985)..............................................................11, 12

Tenafly *eruv* Ass'n, Inc. v. Borough of Tenafly,
 309 F.3d 144 (3d Cir. 2002) ...............................................................................................11, 12, 13

Trustees of Dartmouth Coll. v. Woodward,
 17 U.S. 518 (1819) .................................................................................................................6

**Statutes**

New York Village Law § 1-102 .................................................................................................8

New York Village Law § 6-602 ..............................................................................................8, 9

**RULES**

Federal Rule of Civil Procedure 56(e)........................................................................................2

Local Civil Rule 56.1(e) ............................................................................................................2

**PRELIMINARY STATEMENT**

Verizon and LIPA's opposition to the Village's Motion for Summary Judgment and Preliminary Injunction[1] rests on a set of incredible and legally insupportable positions. The utilities claim unlimited authority to do with their utility poles as they please, regardless the language of their authorizing statutes, the limits of long-existing contracts, and long-standing rules of statutory and contractual interpretation. The Court should reject this broad and unwarranted power-grab and invalidate the utilities' efforts convert their utility poles into religious symbols, thereby diverting them to private religious use.

The Court should similarly reject plaintiffs' efforts to whitewash their planned Establishment Clause violations as an effort at "equal treatment." The utilities argue that they are allowing the EEEA to make *lechi* attachments because they allow other religious and non-religious groups make attachments to their poles. Yet, neither Verizon nor LIPA have set forth any evidence that they have allowed any groups to make permanent attachments to their poles in the past. As such, there is no basis for their "equal treatment" claim; the only purpose and effect of placing *lechis* on utility poles is to advance the religious beliefs and practices of one particular sect of observant Jewish residents, and the only conclusion that reasonably informed observer can draw is that Verizon, LIPA, and possibly the Village itself are using public property to spout their endorsement of these beliefs over others. The *lechi* license agreements, thus, violate the Establishment Clause, and the Village is entitled to summary judgment.

---

[1] In opposition to the Village motion for summary judgment and preliminary injunction, Verizon and LIPA each submitted a separate brief. Rather than submit a separate reply brief for each for each plaintiff, the Village requests that the Court allow it to address plaintiffs' arguments together in this one brief, which slightly exceeds the Court's 10-page reply limit.

**ARGUMENT**

**POINT I:**  **THE CONTENTS OF THE VILLAGE 56.1 STATEMENT OF FACT SHOULD BE DEEMED ADMITTED AS UNOPPOSED**

The Court must deem admitted the contents of the Village's 56.1 Statement because they were unopposed.  Local Civil Rule 56.1(e) provides that "[e]ach statement by the movant or opponent pursuant to 56.1(a) or (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e)."  See Local Civil Rule 56.1(e).  Courts have strictly construed this requirement.  See Global Vision Products, Inc. v. Pfizer, Inc., 2006 WL 344757 at *2 (S.D.N.Y., Feb. 14, 2006) (Facts deemed admitted where plaintiff failed to cite to admissible evidence in opposition to defendant's 56.1 statement).  Verizon's and LIPA's 56.1 Statements in opposition to summary judgment do not dispute the vast majority of the factual assertions set forth in the Village's 56.1 Statement of Undisputed Material Facts.  To the extent they purport to dispute some of the allegations, Verizon and LIPA fail to offer competent admissible evidence to support their claims of dispute, often simply citing to their Complaint or Amended Complaint, which are not admissible evidence.  See Verizon 56.1 Statement (offering no evidence contrary to dispute Contentions 2, 6, 9, 11, 12, 13, 19 43, 44, 45, 46, 47, 48, 61, 62, 66, 67, 79, 80, 81); LIPA 56.1 Statement (offering no evidence to dispute Contentions 2, 10, 11, 12, 13, 19, 61, 61, 67, 79, 80, 81).  These assertions, therefore, should be deemed admitted.

**POINT II:  VERIZON DOES NOT HAVE AUTHORITY TO PERMIT THE ATTACHMENT OF PRIVATE OBJECTS TO PUBLIC UTILITY POLES FOR A PRIVATE PURPOSE**

Verizon claims that its authority to allow private entities for private purposes to attach private objects to utility poles springs from New York Transportation Corporation Law § 27, and it refers to language in the lower court decision in New York Tel. Co. v. North Hempstead, 86 Misc. 2d 487 (N.Y. Sup. Ct. Nassau Co. 1975) for this authority. See Verizon Opp. at 4-5. Verizon's reliance on this decision is misplaced; the decision addressed whether the attachment by the town of light fixtures to the telephone poles constituted a taking. It did not address what, if anything else, New York Telephone Company could do with its facilities. The language Verizon invokes is dictum and has no legal bearing on the present action. It also does not support Verizon's claim that it is entitled to allow private entities for private purposes to attach private objects to utility poles. Verizon's incredible interpretation of Section 27 - that it authorizes *any* conceivable use of its facilities for *whatever* purpose - is against both New York State and United States Supreme Court decisional law governing public franchise grants.

As far back as 1878, the United States Supreme Court in Nw. Fertilizing Co. v. Vill. of Hyde Park, 97 U.S. 659, 666 (1878), a case concerning a state grant of an exclusive right to a corporation stated:

> The rule of construction in this class of cases is that it shall be most strongly against the corporation. Every reasonable doubt is to be resolved adversely. Nothing is to be taken as conceded but what is given in unmistakable terms, or by an implication equally clear. The affirmative must be shown. Silence is negation, and doubt is fatal to the claim. This doctrine is vital to the public welfare. It is axiomatic in the jurisprudence of this court.

Id., accord Pearsall v. Great N. Ry. Co., 161 U.S. 646, 664 (1896). This Supreme Court decision is consistent with the decisional law in New York that the grant by the government of a right to a private entity must be strictly construed against the grantee. Construing § 27 against Verizon, as

3

the Court must, there is no interpretation that would permit Verizon to allow private entities for private purposes to attach private objects to utility poles.

Whatever help Verizon thinks it gets from § 27 is unavailable for the proposed *eruv*'s Dune Road poles. Section 27 by its terms, only applies to the *construction* and the *installation* of equipment by Verizon or its predecessor in interest, New York Telephone Company. The utility poles on Dune Road were constructed and installed by the United States Coast Guard in 1938 pursuant to a franchise granted to the Coast Guard by the Village and the equipment was transferred to New York Telephone Company in 1954 with the approval of the Village (although no franchise agreement was ever submitted by New York Telephone Company as provided for in the 1954 resolution). The use and operation of the utility poles on Dune Road was subject to the limitation in the 1938 franchise agreement that they were to be used only by the Coast Guard, New York Telephone Company, and Long Island Lighting Company; this limitation, the courts instruct, must be strictly construed against Verizon and in favor of the Village. Accordingly, the language in the 1938 franchise agreement prevents Verizon from entering into licensing agreements with the EEEA and renders the current agreements *ultra vires* and void.

Verizon also argues that the agreements executed by the Village Mayor in 2008 and 2009 establish its entitlement to allow private entities for private purposes to attach private objects to utility poles. First, these agreements are invalid, since there was no resolution by the Board of Trustees authorizing the Mayor to execute such agreements. See New York Tel. Co. v. Town of N. Hempstead, 41 N.Y .2d 691, 695-696 (1977). Second, the agreements were to allow banners for holiday decorations, which enhance the aesthetics and character of the Village, a municipal purpose which is permitted under the decisional law. Thus, these agreements add nothing to the analysis, and infuse Verizon with no additional powers to turn them into a public property-

4

situated religious symbol for a private group. Verizon has no authority to issue licenses to allow private entities for private purposes to attach private objects to utility poles, and the Court must dismiss its action against the Village.

**POINT III: THE FRANCHISE AGREEMENTS EXECUTED BY LIPA'S PREDECESSORS PRECLUDE LIPA FROM ALLOWING PRIVATE OBJECTS TO BE ATTACHED TO PUBLIC UTILITY POLES FOR PRIVATE PURPOSES**

In 1910, the Town of Southampton granted a franchise to Riverhead Electric Light Company that allowed the utility to erect and maintain necessary pole lines "*in, under and over the highways of the Town of Southampton west of Quantuck Creek.*" See Ex. V. In 1911, the Town of Southampton granted a franchise to Patchogue Electric Light Company to erect and maintain necessary pole lines "in, under and over the highways of the Town of Southampton west of Speonk River." See Ex. V. Both franchises were subject to the construction of some pole lines and the furnishing of electricity to customers within one year from the date of the franchise agreement. See Exs. V, W. After the franchise agreements were executed, and pursuant to them, the utilities constructed poles and lines and furnished electricity to customers within the one-year period, thereby creating a valid contract between the Town of Southampton and the utilities. See McQuillin Municipal Corporation, 3d ed., rev., vol. 12, § 34.5, p. 27-31. There is no dispute about the existence or contents of these agreements.

There is also no dispute that the franchise agreements existed for more than 80 years before the legislation creating LIPA was enacted. LIPA claims that the enabling legislation gives it a virtually unfettered right to maintain its equipment and execute sublicenses for its poles, "… notwithstanding any historically existing franchises or any restrictions those franchises might have once imposed, if any." LIPA Memo, pp. 2-3. However, there is nothing in the LIPA enabling legislation that allows or permits LIPA to impair valid contracts entered

5

into by its predecessors. LIPA's claim that it does not have to comply with these contracts is contrary to the established contract law.

In Fletcher v. Peck, 10 U.S. 87, 3 L. Ed. 162 (1810), Chief Justice Marshall held that the State of Georgia's attempt to rescind a prior grant of land violated the Constitution's prohibition on laws that impair contractual obligations.[2] In Ohio Life Ins. & Trust Co. v. Debolt, 57 U.S. 416, 429, 14 L. Ed. 997 (1853), the Supreme Court instructed, "When the contract is made, the Constitution of the United States acts upon it, and declares that it should not be impaired, and makes it the duty of this court to carry it into execution. That duty must be performed."

In New Orleans Gas-light Co. v. Louisiana Light & Heat Producing & Mfg. Co., 115 U.S. 650, 672-73 (1885), Justice Harlan, in declaring that a subsequent franchise granted by the state to Louisiana Light Company impaired a prior franchise agreement granted by the state, stated:

> That change of policy, although manifest by constitutional enactment, cannot affect contracts which when entered into, were within the power of the State to make, and which, consequently, were protected against impairment, in respect of their obligations, by the Constitution of the United States. A State can no more impair the obligations of a contract by her organic law than by legislative enactment; for her Constitution is a law within the meaning of the contract clause of the National Constitution … And the obligation of her contracts is as fully protected by that instrument against any impairment by legislation as a contract between individuals exclusively.

Section 11(1) of the New York Transportation Corporation Law, which granted to electric corporations the right to construct electric facilities subject to local municipal approval, was adopted in 1909. In 1910 and 1911, pursuant to the provisions of this law, the Town of Southampton granted to Riverhead Lighting and Patchogue Lighting franchises to construct

---

[2] Chief Justice Marshall further enunciated this principle in Trustees of Dartmouth Coll. v. Woodward, 17 U.S. 518, 519 (1819), when he held that the State of New Hampshire's legislation changing the terms of a grant to the Trustees of Dartmouth College impaired the original contract, similarly violating Constitutional protection against just that.

6

electric facilities within that portion of the Town set forth in the franchise agreements. Part of the area granted to Riverhead Lighting is located within the area that became the Village of Westhampton Beach when it was incorporated in 1928. Upon its incorporation, the Village assumed the rights and obligations under the franchise agreement with Riverhead Lighting. The subsequent legislation creating LIPA did not change -- and constitutionally could not have changed -- the status of, or the terms and conditions of, the 1910 franchise agreement. That franchise agreement remains in full force and effect.

Since LIPA may only allow its facilities to be used for general public purposes, the Village, under both its general police power and its right as franchisor, can enforce the franchise agreement and ensure that LIPA does not allow the private use of its facilities. See id. at p. 671.

LIPA's reference to land use and zoning powers is misplaced, since the Village makes no such claim. Instead, the Village's claim is based upon the franchise agreement and Section 6-602 of the Village law, which grants the Village exclusive jurisdiction and control over the streets of the Village. The Village certainly can require the utilities to use its facilities for public or municipal purposes and can prevent LIPA from allowing private entities for private purposes to attach private objects to its utility poles.

Similarly, LIPA's argument that the Village's position could affect provisions relating to electrical, lighting and telephone services is a total distortion of the Village's position. See LIPA Memo. at 9. The Village has never suggested that the utilities cannot use their facilities for public or municipal purposes. The Village merely maintains that New York State law prohibits the utilities from allowing private entities for private purposes to attach private objects to utility poles located within the Village's rights-of-way, particularly where, as here, LIPA seeks to turn

7

those public-property-situated poles into religious objects for the private, religious benefit of a religious sect.

LIPA also incorrectly argues that there is no evidence of an assignment of the franchise agreement from Riverhead Lighting to the Village. The franchise agreement granted to Riverhead Lighting provided for it to construct its facilities within the streets of the Town of Southampton. When the Village of Westhampton Beach was incorporated, the Village not only took over ownership and control of the roads within the Village (to which the agreements attached), but it also assumed the ownership of the franchise agreement with Riverhead Lighting. See New York Village Law §§ 1-102 and 6-602; McQuillin Municipal Corporation, 3d ed., rev., vol. 2A, § 7:52, p. 74 and section 7:60 p.93. Absent the franchise agreement with Riverhead Lighting, there would be no LIPA-owned electric utility poles located in the Village. In that situation, as now, LIPA would have no authority to enter into any agreement with the EEEA to allow it to attach private objects to the utility poles located in the Village for private purposes.

Similarly meritless is LIPA's final argument - that the Village has not established the geographical scope of the Riverhead Lighting franchise and that it covered the geographical bounds of the Village. Riverhead Lighting was granted a franchise west of Quantuck Creek, and Patchogue Lighting was granted a franchise west of the Speonk River. The Court can take judicial notice that the Village is located west of Quantuck Creek and east of the Speonk River.[3]

---

[3] Since it appears that LIPA does not know the geographical boundaries of the municipalities in its service area, attached to the Reply Declaration of Brian Sokoloff is a map of the area that shows that the Village is located west of Quantuck Creek and east of the Speonk River, *i.e.*, within the geographical boundaries of the Riverhead Lighting franchise. See Ex. FF. As further evidence of the location of the Village, a copy of the geographical description of the Village filed with the Secretary of State at the time the Village was incorporated is also attached. See Ex. GG.

8

The Village has a right to enforce the franchise agreement assumed by LIPA and can require LIPA to comply with its terms and conditions and the law of this State that prohibit the EEEA's private use of LIPA'S utility poles.

**POINT IV:  WESTHAMPTON BEACH HAS STANDING TO CHALLENGE LIPA'S AND VERIZON'S VIOLATION OF THE ESTABLISHMENT CLAUSE THROUGH USE OF VILLAGE PUBLIC PROPERTY FOR A PURELY RELIGIOUS PURPOSE**

LIPA seeks to convert public utility poles in the Village into religious implements and to help create a religious boundary around the Village with borders approximately coterminous with Village borders.  Yet, LIPA argues that the Village lacks standing to challenge Establishment Clause violation "because WHB does not own the poles on which the *lechis* would be placed."[4]  LIPA Opp. p. 14.  That the Village does not own the poles themselves is of no consequence; the public utility poles stand on public property in the Village's public rights of way.  The Village has exclusive control over these rights of way pursuant to N.Y. Village Law § 6-602, and Verizon and LIPA seek to use these public rights of way to place religious symbols on public property.  These religious symbols will imbue the Village itself with special religious significance, symbolically leasing public Village land to certain observant Jews for the purpose of religious observance.

These symbols will both divert public property, *the Village's property*, to a religious use and covey a religious message.  In so doing it may well subject the Village to legal liability.  Indeed, the Village is already being sued by the JPOE in connection with Verizon and LIPA

---

[4] To satisfy the constitutional requirements for "standing" at this stage, the plaintiff must allege that (1) he personally has suffered "injury-in-fact," an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury fairly can be traced to the challenged action ("causation"); and (3) the injury is likely to be redressed by a favorable decision ("redressability").  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  Plaintiffs do not argue that the Village fails to meet elements (2) or (3).

plans to help establish an *eruv*. The Village has, therefore, established that is has suffered or stands to suffer an injury-in-fact sufficient to create standing.

**POINT V:  LIPA AND VERIZON HAVE NOT SET FORTH EVIDENCE TO SHOW THAT "EQUAL TREATMENT" RATHER THAN THE MORE OBVIOUS ADVANCEMENT OF RELIGION IS THEIR PURPOSE IN ALLOWING ATTACHMENT OF *LECHIS***

LIPA argues that it passes the first prong of the Lemon test; it claims that it allows other groups to make pole attachments and that its secular purpose in allowing EEEA to do so is to treat the EEEA as it treats other groups. LIPA Opp. at 16. This claim is but empty words. LIPA and Verizon have not set forth any evidence to suggest that they allow other religious groups of non-religious private entities to make permanent attachments to their public utility poles for non-utility purposes. See Verizon Exs. 3-5 (licenses for temporary patriotic and civic holiday banners); LIPA Exs. 2-6 (licenses for temporary banners).[5] Nor have Verizon and LIPA set forth any evidence that they have allowed other groups to convert their poles into symbolic religious implements, as they intend to do here. Thus, Verizon and LIPA have not established that "equal treatment"[6] requires them to permanently or semi-permanently divert their public utility poles to private religious use. They have no "equal treatment" interest in issuing such licenses. As LIPA acknowledges, its purported secular purpose is only entitled to deference so long as the reason is "genuine, not a sham, and not merely secondary to a religious objective." LIPA Opp. at 16 (citing Skoros v. City of New York, 437 F.3d 1, 19-20 (2d Cir. 2006)). Plaintiffs' failure to set

---

[5] While LIPA has apparently licensed its poles to the Family Parish, a religious institution, the license was for an annual festival, not for any religious symbol, attachment, implementation, or practice. See LIPA Ex 3 (Holy Family Parish Festival).

[6] "Equal treatment" cannot in itself justify action that is so purely religious as placing religious symbols on public property. For instance, plaintiffs cannot seriously argue that, if a Christian church approached them and requested that they place crucifixes on poles around the Village because it made their religious practices less onerous, "equal treatment" would justify crucifixes on public property.

forth prior instances of similar or comparable attachments shows that its purported interest in equal treatment is not genuine, but instead an after-the-fact justification for action that lacks a secular purpose; it is a sham, which sounds good and looks good on paper.[7]

**POINT VI:    LIPA AND VERIZON'S LICENSE AGREEMENTS HAVE THE PRIMARY EFFECT OF ADVANCING AND ENDORSING THE RELIGIOUS PRACTICES OF ONE GROUP OF OBSERVANT JEWS**

LIPA does not and cannot dispute that its issuance of licenses for the attachment of *lechis* will have the "principal or primary effect" of advancing religion. See Village Memo. at pp. 16-17.  Having failed to address this prong of the Lemon test, LIPA concedes it.

Instead of addressing the advancement argument, LIPA shifts its attention to the "endorsement" test, arguing that, somehow, a reasonable observer would not conclude that LIPA's actions – which have both the purpose and effect of advancing religion – actually advance religion.  In so arguing, LIPA attempts to cast the reasonably informed observer "aware of the history and context of the community and forum in which the religious display appears"[8] as someone also familiar with LIPA's purported policy in allowing attachments to its displays.  In other words, the reasonable observer, LIPA seems to argue, would view LIPA as winking at the EEEA ("we know why you say you want an *eruv*, and that's why we are letting you put permanent structures on the poles") and then winking at the general public ("we're not doing it for the reason you think; it only looks that way.")  First, as set forth above, LIPA and Verizon have not set forth any evidence that they allow any other groups to make permanent non-utility

---

[7] Furthermore, plaintiffs themselves created the very problem of which they now claim to be victims – they allowed other organizations to place non-utility-related attachments to their poles. They cannot now argue that their own prior conduct justifies the present Establishment Clause violation.

[8] See Skoros v. City of New York, CV-02-6439 (CPS), 2004 WL 5570287 (E.D.N.Y. Feb. 18, 2004).

11

attachments. Second, there is no reason to believe that any reasonable observer – even one familiar with the history of the nature of *eruvin* and the history of the debate in the Village – would be familiar with LIPA's and Verizon's attachment policies or the reasons for their actions, or would think there could be a secular purpose in converting public utility poles into religious implements.

**POINT VII: VERIZON'S AND LIPA'S CONVERSION OF PUBLIC UTILITY POLES INTO RELIGIOUS IMPLEMENTS IS AN ADVANCEMENT OF RELIGION, NOT A REASONABLE ACCOMMODATION THEREOF**

Verizon and LIPA rely on Tenafly *eruv* Ass'n, Inc. v. Borough of Tenafly, 309 F.3d 144, 175 (3d Cir. 2002), ACLU v. City of Long Branch, 670 F. Supp. 1293, 1296 (D.N.J. 1987), and Smith v. Cmty. Bd. No. 14, 128 Misc. 2d 944, 946 (Sup. Ct., Queens Cnty. 1985) to argue that the establishment of *eruvin* is a reasonable accommodation that does not violate the Establishment Clause. These cases are not binding on this Court and, in any event, wrongly decided the issue.[9]

The New Jersey decision in ACLU v. City of Long Branch, was based on the erroneous finding – the same erroneous finding plaintiffs urge here – that the purpose of an *eruv* is secular in that it allows observant Jews to "engage in secular activities on the Sabbath, such as carrying a book or pushing a baby carriage to the park," and allows these observant Jews "access to public property." ACLU v. Long Branch, 670 F. Supp. at 1295.[10]

The notion that the purpose of an *eruv* is secular defies both the evidence in this case and

---

[9] See Alexandra Lang Susman, Strings Attached: An Analysis of the Eruv Under The Religion Clauses of the First Amendment and the Religious Land Use and Institutionalized Persons Act, 9 U. Md. L.J. Race, Religion, Gender & Class 93 (2009).

[10] The Smith court similarly misapprehended the issue in holding that "the policy of New York City to allow equal access to public lands for religious or nonreligious purposes is an acceptable secular purpose." 128 Misc. 2d at 947.

12

logic alike. The *eruv* is a rabbinical legal fiction, a religious tool, only meaningful to Orthodox Jews. It facilitates religious worship by making it easier for Orthodox Jews to attend synagogue and move around in general on the Sabbath. While it is true that it allows religious Jews to engage in certain otherwise secular activities like pushing and carrying in public places, it is only the religious belief of these observant Jews that necessitates the *eruv* in order to engage in these activities. See Ex. K, p. 178; Ex. H, ¶ 4; Ex. E, ¶ 6; Ex. F, ¶ 6. Thus, the only conceivable purpose in the creation of an *eruv* is the advancement of religious Jewish practice. See Ex. K, ¶ 14.

Indeed, the Third Circuit Court of Appeals in Tenafly *eruv* Ass'n recognized that *lechis* were essentially religious, holding that "the reasonable, informed observer would know that the *lechis* are items with religious significance and that they enable Orthodox Jews to engage in activities otherwise off limits on the Sabbath." Tenafly *eruv* Ass'n, 309 F.3d at 176. While the Tenafly *eruv* Ass'n court also held that the *lechis* did not violate the Establishment Clause, it did so on very different facts. In that case, the court found that allowing the *lechis* to remain was permissible because (1) removing them would violate the Free Exercise clause by treating the religious attachment differently from non-religious attachments and (2) there was no evidence that the *lechis* were intended to send a religious message. Id. at 176-77. In this case, however, there is no evidence that Verizon or LIPA have allowed any permanent attachments by private groups – religious or non-religious – in the past and, thus, no danger of unequal treatment. Additionally, there is ample evidence in this case that the *lechis* are religious symbols that send a distinctly religious message to religious Jews. For these reasons, Tenafly *eruv* Ass'n does not control.

The record in *this* case, on which this motion rests, establishes that the attachment of *lechis* to Verizon and LIPA public utility poles has no secular purpose or effect and constitutes government endorsement of religion. It, thus, violates the Establishment Clause and cannot be a "reasonable accommodation" of the EEEA members' religious needs.

**POINT VIII: THE VILLAGE HAS ESTABLISHED ITS ENTITLEMENT TO A PRELIMINARY INJUNCTION**

Verizon argues that the Village has not established the existence of irreparable harm, but has failed to distinguish or even address those cases that hold that an Establishment Clause violation creates irreparable harm as a matter of law. See Village Memo. at 23 (citing Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 304 (D.C. Cir. 2006) ("[A] party alleging a violation of the Establishment Clause per se satisfies the irreparable injury requirement of the preliminary injunction calculus.) The Village's timing in bringing this motion does not undermine this necessary legal conclusion; the Village moved for an injunction as soon as Verizon made it clear that it intended to go ahead with its plan to allow the attachment of *lechis*.

Verizon also argues that, "Postponement of the attachment of *lechis* interferes with a valid private contract and with the Free Exercise rights of the EEEA and its members," Verizon Memo. at 15, but this claim rings hollow; Verizon and LIPA have themselves, of their own accord, postponed performance on their contracts with the EEEA. They cannot seriously claim that continuing to do so creates a hardship. On the other hand, the erection of *lechis* would impose a hardship on the Village in that it would change the status quo, violate the Establishment Clause, and impermissibly convert the Village in a religious zone that favors one group of observant Jewish residents over others.

For these reasons, and because the Village has established a likelihood of success on the merits, or, at least, sufficiently serious questions going to the merits to make them a fair ground for litigation, it is entitled to a preliminary injunction in this matter.

## CONCLUSION

For all the foregoing reasons, this Court should (1) grant the Village's motion for summary judgment, declaring that Verizon and LIPA's plan to allow the placement *lechis* on their utility poles is outside their legal authority and violates the Establishment Clause of First Amendment; (2) grant the Village's motion for a preliminary injunction, barring Verizon and LIPA from issuing the licenses while this action is pending; and (3) dismiss this action in its entirety, with costs, disbursements, and such other and further relief as to this Court is just, proper, and equitable.

Dated: Westbury, New York
September 27, 2012

SOKOLOFF STERN LLP
Attorneys for the Defendants
VILLAGE OF WESTHAMPTON BEACH

By: Brian S. Sokoloff
Leo Dorfman
355 Post Avenue, Suite 201
Westbury, New York 11590
(516) 334-4500
File No. 120073

THE LAW OFFICES OF
RICHARD T. HAEFELI
Richard T. Haefeli
48F Main Street
P.O. Box 1112
Westhampton Beach, New York 11978