**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

VERIZON NEW YORK INC. and LONG ISLAND LIGHTING COMPANY d/b/a LIPA,

                Plaintiffs,

    -against-                          11-CV-252 (LDW)

THE VILLAGE OF WESTHAMPTON BEACH, THE VILLAGE OF QUOGUE and THE TOWN OF SOUTHAMPTON,

                Defendants.

**VERIZON NEW YORK INC.'S PROPOSED CONCLUSIONS OF LAW**

                          Michael E. Wiles
                          Erica S. Weisgerber
                          DEBEVOISE & PLIMPTON LLP
                          919 Third Avenue
                          New York, NY 10022
                          (212) 909-6000
                          mewiles@debevoise.com
                          eweisgerber@debevoise.com
                          *Attorneys for Verizon New York Inc.*

**TABLE OF CONTENTS**

**PAGE**

Verizon's Authority Under Transportation Corporations Law § 27 ............................................... 1

Municipal Approval of Underground Lines ..................................................................................... 4

Prior Acknowledgements of Verizon's Legal Rights ...................................................................... 4

The Westhampton Beach Dune Road Resolutions .......................................................................... 5

Westhampton Beach's Police Powers ............................................................................................... 7

Quogue's Police Powers ................................................................................................................... 8

# **TABLE OF AUTHORITIES**

**CASES**

*City of N.Y. v. Verizon New York, Inc.*, No. 402961/03, 2008 WL 8666618 (N.Y. Sup. Ct. July 7, 2008)..................................................................................................................4

*City of Olean v. W.N.Y. & Pa. Traction Co.*, 214 N.Y. 526 (1915)..................................................6

*Commissioner of Internal Revenue v. Morris*, 90 F.2d 962 (2d Cir. 1937).....................................3

*Consol. Edison Co. of N.Y., Inc. v. Red Hook*, 60 N.Y.2d 99 (N.Y. 1983) ......................................8

*County of Niagara v. Shaffer*, 607 N.Y.S.2d 466 (N.Y. App. Div. 3d Dep't 1994).........................9

*Deeper Life Christian Fellowship, Inc. v. Sobol*, 948 F.2d 79 (2d Cir. 1991).................................3

*East End Eruv Assoc. v. Village of Westhampton Beach*, 11-cv-213 (E.D.N.Y. June 27, 2011) ............................................................................................................................7

*Hoffman v. Capitol Cablevision Systems, Inc.*, 52 A.D.2d 313 (3d Dep't 1976) ............................6

*McCall v. United Engineering & Foundry Co.*, 148 F. Supp. 801 (S.D.N.Y. 1957).......................3

*New York Telephone Co. v. North Hempstead*, 86 Misc. 2d 487 (N.Y. Sup. Ct. Nassau Co. 1975)................................................................................................................. *passim*

*New York Telephone Co. v. North Hempstead*, 41 N.Y.2d 691 (1977)................................ *passim*

*People of State of New York v. Roberts*, 171 U.S. 658 (1898) .......................................................3

*Village of Carthage v. Central N.Y. Tel. & Tel. Co.*, 185 N.Y. 448 (1906) ....................................1

**STATUTES**

N.Y. Const. art. IX, § 3...................................................................................................................8

N.Y. Business Corporation Law § 202 ...........................................................................................3

N.Y. Municipal Home Rule Law § 10............................................................................................8

New York Business Corporations Law § 202(a) ...........................................................................2

New York State Transportation Corporations Law § 4 .............................................................2, 3

Verizon's Authority Under Transportation Corporations Law § 27...................................... *passim*

Quogue Village Code § 158............................................................................................................8

Fed. R. Evid. 801 ...........................................................................................................................5

Pursuant to this Court's February 4, 2013 Order, and in conjunction with the Joint Stipulation of Uncontested Facts Regarding Verizon's and LIPA's Authority to License Attachments to their Utility Poles (the "Stipulation"), Plaintiff Verizon New York Inc. ("Verizon") hereby submits its Proposed Conclusions of Law.

### Verizon's Authority Under Transportation Corporations Law § 27

1. Section 27 of the New York State Transportation Corporations Law provides the following rights to Verizon and to other telephone and telegraph companies:

> Any such corporation may erect, construct and maintain the necessary fixtures for its lines upon, over or under any of the public roads, streets and highways; and through, across or under any of the waters within the limits of this state, and may erect, construct and maintain its necessary stations, plants, equipment or lines upon, through or over any other land, subject to the right of the owners thereof to full compensation for the same.

*See* N.Y. Transportation Corporations Law § 27.

2. The scope of a telephone company's rights under Section 27 have been addressed by the New York courts, including the New York Court of Appeals, in *Village of Carthage v. Central N.Y. Tel. & Tel. Co.*, 185 N.Y. 448, 451 (1906) and in *New York Telephone Co. v. North Hempstead*, 86 Misc. 2d 487 (N.Y. Sup. Ct. Nassau Co. 1975), *aff'd* 52 A.D.2d 934 (2d Dep't 1976), *modified on other grounds by* 41 N.Y.2d 691 (1977).

3. The New York Court of Appeals has confirmed that, pursuant to Section 27, "telegraph and telephone companies derive the right to erect their poles and string their wires directly from the state" and not from local municipalities. *See Vill. of Carthage v. Central N.Y. Tel. & Tel. Co.*, 185 N.Y. 448, 451 (1906).

4. The New York Court of Appeals has also confirmed that, pursuant to Section 27, a telephone company has an "unconditional right to erect and maintain poles for its lines upon public streets and highways" and that a local municipality cannot restrict those rights through

franchise rules or statutes. *See New York Tel. Co. v. North Hempstead*, 41 N.Y.2d 691, 693 (1977).

5. The New York Court of Appeals has further confirmed that, once erected, utility poles are private property belonging to the utility companies. *See id.* at 699 ("The town concedes, as it must, that the utility poles themselves are personal property.").

6. New York State Transportation Corporations Law § 4 makes Verizon (and its predecessor New York Telephone Company) subject to the New York Business Corporations Law.

7. Pursuant to New York Business Corporations Law § 202(a) "Each corporation, subject to any limitations provided in this chapter or any other statute of this state or its certificate of incorporation, shall have power in furtherance of its corporate purposes: (5) To sell, convey, lease, exchange, transfer or otherwise dispose of, or mortgage or pledge, or create a security interest in, all or any of its property, or any interest therein, wherever situated."

8. The New York courts have held (and the Court of Appeals has affirmed), pursuant to Section 27, that a telephone company's use of telephone poles is not limited to the provision of telephone services, and that telephone companies have the right to enter into contracts to allow others to use such poles:

> The defendants urge in their memorandum submitted on these motions . . . that the plaintiff may only use its poles for telephone purposes and that the use of the poles for purposes other than that for which the plaintiff was granted a special franchise under section 27 of the Transportation Corporations Law is beyond its powers. This argument lacks merit. The thrust of this claim is that the special franchise granted to plaintiff by section 27 of the Transportation Corporations Law gives the plaintiff the right to erect, construct and maintain the necessary fixtures for its telephone lines in the public roads, streets and highways. It is argued further that the words "necessary fixtures" can only relate to plaintiff's use of telephone lines for telephone purposes as indicated by the definition of a telephone company contained in section 25 of the

2

> Transportation Corporations Law. Therefore, the argument runs, the plaintiff's special franchise permitted it to use public streets only for the purpose of providing telephone service and for no other purpose. This narrow construction of the statute granting the special franchise is not supported by the statute's language. That is to say, there is no express prohibition against the use of the "necessary fixtures" such as poles for purposes other than telephonic communication. Moreover, the plaintiff's certificate of incorporation contains a grant of power to use its equipment for purposes other than providing telephonic communication. In addition, as a result of subdivision (a) of section 4 of the Transportation Corporations Law making the plaintiff subject to the provisions of the Business Corporation Law, the plaintiff possesses the right to enter into contractual arrangements with others for the use of space on its poles pursuant to the powers granted in subdivision (a) of section 202 of the Business Corporation Law.

*See New York Tel. Co. v. North Hempstead*, 86 Misc. 2d 487 (N.Y. Sup. Ct. Nassau Co. 1975), *aff'd* 52 A.D.2d 934 (2d Dep't 1976), *modified on other grounds by* 41 N.Y.2d 691 (1977).

9. The decisions of the New York courts as to the scope of the rights granted by Section 27 of the Transportation Corporations Law are binding on this Court. *See, e.g.*, *Deeper Life Christian Fellowship, Inc. v. Sobol*, 948 F.2d 79, 83 (2d Cir. 1991) ("[W]here an appellate court of New York has construed the statute in question, its construction is binding on this court in the absence of other persuasive data that the highest court of the state would decide otherwise." (citation omitted)); *Commissioner of Internal Revenue v. Morris*, 90 F.2d 962, 963 (2d Cir. 1937) (decision of the New York Court of Appeals interpreting New York statutes binding on Second Circuit); *McCall v. United Engineering & Foundry Co.*, 148 F. Supp. 801 (S.D.N.Y. 1957) ("The interpretation of a New York statute rendered by the New York courts is binding upon a United States District Court sitting in New York." (citations omitted)); *see also People of State of New York v. Roberts*, 171 U.S. 658, 661 (1898) ("The construction put upon the statute of the state of New York by its courts is, of course, binding upon this court.").

3

10. The contract between Verizon and the East End Eruv Association (the "EEEA") only implicates the use of Verizon's own property and does not implicate the use of any other property, either public or private.

## Municipal Approval of Underground Lines

11. Transportation Corporations Law section 27 requires telephone and telegraph corporations to obtain municipal approval if new transmission lines "*are to be placed underground.*" *See City of N.Y. v. Verizon New York, Inc.*, No. 402961/03, 2008 WL 8666618 (N.Y. Sup. Ct. July 7, 2008) (emphasis added); *see also* N.Y. Trans. Corps. Law § 27.

12. Verizon's contract with EEEA does not involve the installation of new telephone poles or the placement of new transmission lines underground, and so the portions of Section 27 described in the prior paragraph are not applicable.

## Prior Acknowledgements of Verizon's Legal Rights

13. WHB has entered into numerous license agreements with Verizon, each of which contained an express acknowledgement by WHB of Verizon's rights "to grant, renew and extend rights and privileges to others not parties to this Agreement, by contract or otherwise, to use any poles and/or anchors covered by this Agreement." (*See* Stip. of Undisputed Facts Ex. O, 2008 Pole Attachment Agreement (and Supporting Documentation) Between Westhampton Beach and Verizon; Stip. of Undisputed Facts Ex. P, 2009 Pole Attachment Agreement Between Westhampton Beach and Verizon; Stip. of Undisputed Facts Ex. Q, 2010 Application and Pole License of Westhampton Beach for license to make attachments to two Verizon Poles (including Supporting Documentation).)

14. Quogue has previously entered into at least one license agreement with Verizon, which contained an express acknowledgement by Quogue of Verizon's rights "to grant, renew and extend rights and privileges to others not parties to this Agreement, by contract or otherwise,

4

to use any poles and/or anchors covered by this Agreement." (*See* Verizon Ex. 1,[1] 1986 Pole Attachment Agreement Between Quogue and Verizon.)

### The Westhampton Beach Dune Road Resolutions

15. WHB contends that Verizon owns and uses three utility poles on Dune Road pursuant to a purported "franchise" granted by WHB. In support thereof, WHB has referred to a Village resolution from the 1930s that allowed the Coast Guard to install telephone poles on Dune Road, and a later resolution that approved a transfer of ownership of the poles to Verizon's predecessor. (*See* Stip. of Undisputed Facts, Ex W, 1938 WHB Resolution; *id.*, Ex. X, 1952 WHB Resolution.)

16. As noted above, Verizon owns and maintains telephone poles pursuant to the authority granted by Section 27 of the Transportation Corporations Law, and this would be true regardless of any purported "franchise" granted by local authorities. *See North Hempstead*, 41 N.Y.2d at 693.

17. There is no statute or regulation that gives WHB the right to grant "franchises" with respect to the use and maintenance of telephone poles. To the extent WHB argues that the absence of a "signed franchise or consent" from WHB to the New York Telephone Company (Verizon's predecessor) to take over and operate the pole line along Dune Road is legally significant, this argument is misplaced. Verizon owns and operates its poles pursuant to the authority granted by the state—not WHB.

---

[1] As explained in the letter that Verizon has submitted to the Court along with its Proposed Conclusions of Law, Quogue refused to stipulate that the Pole Attachment Agreement between described above had been executed. Verizon submits that the execution of the document is an undisputed fact; that it was signed by Quogue's then-Mayor T. Decker Orr and is admissible into evidence as a party admission under Fed. R. Evid. 801(d)(2); and that its language is unambiguous and can be interpreted as a matter of law. If Quogue disputes its authenticity, Verizon is willing to authenticate this document by affidavit or live testimony.

5

18. Moreover, nothing in the 1952 WHB Board of Trustees resolution conditions the transfer of ownership between the Coast Guard and New York Telephone Company on the execution of a franchise or consent by WHB. *See* Stip. Ex. X.

19. Furthermore, the Court of Appeals has confirmed that even if a telephone pole were subject to a franchise, the local municipality would have no right to limit the telephone company's use of the pole (including its right to enter into contracts to allow others to use the pole) in the absence of an "express reservation" in the franchise itself. *See North Hempstead*, 41 N.Y.2d at 698; *see also City of Olean v. W.N.Y. & Pa. Traction Co.*, 214 N.Y. 526, 528 (1915) (holding that when a franchise is granted, it becomes "property protected by the Constitution and, except for conditions attached to the consent, subject to regulation only under the police power").

20. Even if the board resolutions regarding Dune Road could somehow be construed as a "franchise" as to those particular poles, there is no express limitation in the resolutions as to the manner in which those utility poles may be used or as to the items that may be attached to them, and so no such restriction can be imposed in this case. *Id.*

21. In addition, a franchisee's rights are similar to the rights of holders of easements. A telephone company who has placed a telephone pole pursuant to a private easement has the right (under the apportionability doctrine) to license the attachment of other items to such utility poles. *See Hoffman v. Capitol Cablevision Systems, Inc.*, 52 A.D.2d 313, 318 (3d Dep't 1976) (holding that the phone companies had "exclusive easements in gross which were properly apportioned to [its licensee] without compensation to [the servient property owners]" and without requiring the owners' consent, and that thus permitted defendant phone company to issue licenses for attachments to the poles.).

22. Finally, Verizon notes that WHB has waited until now—more than 60 years after the WHB Board of Trustees passed the relevant resolution—to raise questions about the alleged absence of a signed "franchise or consent" evidencing the resolution. Indeed, WHB previously had no objection to New York Telephone Company's and Verizon's ownership and operation of the poles on Dune Road in WHB. It should be estopped from raising such issues now.

23. For each of the foregoing reasons, the purported WHB "franchises" do not restrict Verizon's rights to allow the EEEA to attach lechis to Verizon's telephone poles.

### Westhampton Beach's Police Powers

24. A municipality may impose reasonable "police power" regulations on the location, timing and manner of installation of new telephone poles. *See, e.g.*, Stip. of Undisputed Facts, Exs. L, M (permits granting New York Telephone Co. the right to dig up the street to place new poles and anchors for existing poles); *see also North Hempstead*, 41 N.Y.2d at 698.

25. WHB has previously acknowledged that it has no such "police power" statutes or rules that apply to the attachment of lechis to telephone poles. *See, e.g.*, Preliminary Injunction Hearing, *East End Eruv Assoc. v. Village of Westhampton Beach*, 11-cv-213 (E.D.N.Y. June 27, 2011), Tr. 279:17–23 ("MR. TELLER: I don't know of any of our code or laws that affect the eruv application to us. . . . I don't know of any laws, codes, in our village compiled that affect the eruv, nonapplication or an application."); *see also id.* Tr. 282:1-8 ("MR. SUGARMAN: And so you signed an agreement, did you not, that acknowledged that Verizon had the right to license other parties to put material on the Verizon pole? Correct? MR. SOKOLOFF: Objection. This is a contract—this is an agreement for something else. The mayor said that the sign ordinance in the village—he knows of no law in the village that prevents it.").

7

**Quogue's Police Powers**

26. Section 158-1 of the Quogue Village Code provides that "No encroachment or projection upon, into, or over any public road or street in the Village of Quogue shall be made or maintained." *See* Quogue Village Code § 158-3.

27. The Quogue Village Code defines an "Encroachment" as:

> Any private use of any portion of a public right-of-way through any structure or device, whether upon, above or under said right-of-way; but nothing herein contained shall be construed to apply to any vehicle or any easement now legally owned by any public service corporation. The term 'encroachment' also includes any private use of any portion of a public right-of-way for the display and sale of any products, goods, wares or merchandise.

*Id*. §158-2.

28. The Quogue Village Code defines a "Projection" as:

> any part of any building, structure or device erected upon private property or attached to any structure or device erected upon private property."

*Id*. § 158-3.

29. The Quogue Village Code defines a "Public Road or Street" as "The area between the extreme lines of any public right-of-way in this Village, including any state or country road or highways as well as a Village road or street." *Id.*

30. Quogue argues that the foregoing provisions of the Village Code act as an absolute bar to the attachment of lechis to utility poles. As described above, however, Verizon's rights with respect to its utility poles derive from state law, not local law. Although Quogue may impose reasonable "policy power" limits, it cannot ban all attachments to utility poles, because such a restraint would take away rights granted by state law. *See, e.g.*, N.Y. Const. art. IX, § 3; N.Y. Municipal Home Rule Law § 10; *Consol. Edison Co. of N.Y., Inc. v. Red Hook*, 60 N.Y.2d

8

99, 107–08 (N.Y. 1983) (local laws that "impose prerequisite additional restrictions on rights under state law" are inconsistent with state law and therefore invalid (internal quotations and citations omitted)) *County of Niagara v. Shaffer*, 607 N.Y.S.2d 466, 467 (N.Y. App. Div. 3d Dep't 1994) (invalidating local laws that imposed "prerequisite additional restrictions" on state-created rights).

31. In addition, the contract between Verizon and EEEA does not relate to use of the street right-of-way, nor does the contract divert the highways from public use to private use. Instead, Verizon's agreement with the EEEA contemplates the issuance of licenses to attach lechis to Verizon's own utility poles, *i.e.*, relates to the use of Verizon's personal property. *See North Hempstead*, 41 N.Y.2d at 699 ("The town concedes, as it must, that the utility poles themselves are personal property.").

32. The lechis to be attached to Verizon's utility poles under its contract with the EEEA are not "encroachments" or "projections." The lechis are 5/8" inch half round strips of PVC that will be attached flush against the poles.

33. Quogue has previously taken the position that the lechis constitute a "device" under the Village Code, citing the definition of "device" from free online dictionaries: (1) "a thing made for a particular purpose[; an invention or contrivance, especially a mechanical or electrical one]" (from Dictionary.com); and (2) "a contrivance or invention serving a particular purpose[, especially a machine used to perform one or more relatively simply tasks]" (from thefreedictionary.com). Quogue's Opp'n to EEEA's Renewed Motion for Preliminary Injunction, at 13 n.3. The bracketed portions of these definitions, which Quogue omitted, confirm that a lechi does not fall within the "normal construction" of the term "device," as it is neither a "contrivance" nor a "device" that performs a "mechanical" or "electrical" function.

9

34. Nor can Quogue rely on purported "policy" justifications (i.e., "safety of our residents," "beauty and quality of life in the Village," and "to avoid constitutional violations and liability"). As Quogue's Board admitted in its decision denying EEEA's application, the lechis are "small" and "blend in aesthetically" to the utility poles, and therefore will not affect the beauty of the Village or the quality of life of its residents. Similarly, Quogue has failed to proffer even one adverse effect that the lechis could have on public safety.

Dated: New York, New York
March 20, 2013

Respectfully submitted,

/s/ Erica S. Weisgerber

Michael E. Wiles
Erica S. Weisgerber
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
mewiles@debevoise.com
eweisgerber@debevoise.com
Telephone: (212) 909-6000
Facsimile: (212) 909-6836

*Counsel for Verizon New York, Inc.*